# SUPERIOR COURT.

## John Pettigrew agt. The Mayor, &c., of the City of New-York.

Where the plaintiff obtained judgment against the defendants on a contract for regulating a street, and subsequently the defendants moved to set aside the judgment, on the ground that the original bid of the plaintiff was 22 cents per cubic yard for the earth filling, instead of 42 cents; that the original record of the contract kept in the street commissioner's office had been altered by an erasure of *twenty* and a substitution of the word *forty*.

*Held*, on the papers before the court, that it did not appear that the plaintiff participated in or knew of any such fraud.   Nor did the mere fact of the extra

amount of $7,000, recovered by him for such work, raise a presumption of fraud against him. But while the plaintiff vindicated his own integrity, he presented a case for the relief of the defendants.

The contract was awarded to the plaintiff as the lowest bidder, and on the case presented by him he must be assumed as having meant and offered a bid at 42 cents, and took the contract at that price, in which case the record showed that there were nine lower bidders. The contract, therefore, must have been made by the corporation on a misstatement or mistake of fact, and was void. The contract sanctioned and intended to be made by them was for 22 cents—which the plaintiff never agreed to.

*Held*, that this mutual and fundamental mistake of the very basis of the contract was ample ground for relief, and of the power of the court to give relief there could be no doubt. (*Code*, § 474.) Judgment and report of referee, with all subsequent proceedings, set aside, without costs.

*New - York Special Term, June,* 1859.

MOTION by the defendants to set aside and vacate a judgment and all proceedings subsequent thereto.

R. BUSTEED, *for motion.*
G. DEAN, *in opposition.*

HOFFMAN, Justice. The plaintiff recovered a judgment against the defendants on the 15th of January, 1859, for the sum of $25,700.28, besides costs. About $15,765 of this amount was for the performance of a contract for regulating Sixty-third street, between Fifth and Sixth avenues.

The contract on which this part of the claim was founded was dated the 26th day of November, 1852, and, in the copy annexed to the complaint, provided for payment for the work as follows:

" For all work which shall be blasted, and broken to a suitable size for carting, including its removal and deposit in embankment, the sum of sixty cents per cubic yard shall be paid, and twelve cents per cubic yard for earth excavated, and *forty-two* cents per cubic yard for earth filling; culverts, per running foot, $1."

The plaintiff sued the defendants upon this alleged contract, alleging performance of the work as stipulated, and demand and refusal of payment.

The defendants, by answer, insisted upon the fact of a discontinuance of the work contracted for, upon the ground being taken for the Central Park, and notice of such discontinuance being given.

The case was referred, was litigated, and judgment given in favor of the plaintiff, from which no appeal has been taken.

It is therefore sufficient to observe, that if the referee was wrong upon the point contested and decided by him, the error cannot now be redressed; plainly, it cannot be done in this mode.

The present application is made upon the ground that the original bid of the plaintiff was 22 cents per cubic yard for the earth filling, instead of 42 cents; that the original record of the contract made in a book kept in the street commissioner's office has been altered by an erasure of *twenty* and substitution of the word *forty*; and that it appeared by a copy of the estimates, transmitted to the common council by the street commissioner October 29, 1852, stating his award to the plaintiff of the contract, that 22 cents was the actual amount.

By that document the then street commissioner reported that the contract was awarded to the plaintiff as the lowest bidder. It appears upon its face that the bid of the plaintiff was for excavating earth, per cubic yard (250 yards), 12 cents; for filling earth, per cubic yard (35,000 yards) 22 cents; for excavating and removing rock, per cubic yard (500 yards), 60 cents; and for culverts, per running foot (180 feet), $1 per foot. The aggregate of the bid amounted to $8,197.

There were thirteen other bidders, whose offer for the filling earth, per cubic yard, varied from 30 cents to 69 cents. Four of these offers were from 49 cents upwards. The lowest aggregate of the other bidders was $10,650. The highest was $24,806.50.

The additional charge of 20 cents upon the earth filling of 35,000 yards would add $7,000 to the above amount of the plaintiff's offer, making it $15,197. Four of the offers would, then, exceed it in the aggregate, the lowest of such four being $17,832.50.

It is sworn to, and not contested, that the habit of the plain-

tiff, in every extensive contract of a similar nature with the corporation, was not to take a copy of the contract; that he did not do it at this time; that he or his attorney obtained the copy annexed to the complaint, upon commencing the action, which was certified by the deputy street commissioner. The contracts are entered in a book kept in the office.

It is also shown, that upon the trial the original book was produced in evidence before the referee, and produced by the plaintiff's attorney.

The plaintiff, in his affidavit to oppose the present motion, denies any knowledge, information or suspicion of any alteration in the contract, "or that it was not in exact accordance with his bids for the said work," until he saw the communication of Mr. Lovell, of the 21st day of February, 1859; that he has no knowledge or suspicion of the person by whom the alteration was made, if any was made; that the contract was never seen by him since its execution; that he has no copy of his bid, nor has he seen it since it was deposited, nor has he ever seen the original bids of his competitors; that, if the same have been abstracted from the office, it was without his knowledge or privity. That he does not know what his bid actually was for such work; that he supposed at the time of the commencement of this action that the assessment of said work had been made in accordance with the bid under which the contract had been awarded to him, and that he had no knowledge to the contrary now.

That for thirty years he has had such contracts with the defendants, and never been in the habit of retaining copies of his bids or contracts, but to rely on the original records.

He further says: "That the price contained in said contract for said work is now as it was at the time of its execution by him, as he verily believes;" and he states positively, and of his own knowledge, "that no alteration, change or erasure, has ever been made therein by deponent, or at his instigation, or with his privity or assent."

It appears also that the original bids cannot, after diligent search, be found in the proper office.

Mr. Lovell swears to an inspection of the record of the contract, and his belief that the erasure and alteration were fraudulently made.

The book was produced, and inspected by consent. It is sufficient to say that, with the affidavit, there is ground for inquiring into the fact, at least, if any further inquiry can be allowed in the case.

By the revised statutes, no judgment in any court of record shall be set aside for irregularity on motion, unless such motion be made within one year after the time such judgment was rendered. (2 *R. S.* 359, § 2.)

The Code (§ 174) is more comprehensive : " The court may, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment order or other proceeding taken against him, through his mistake, inadvertence, surprise, or excusable neglect."

It can scarcely be contended that, when a trial has been had, the court under this section would grant relief, when it would not grant a motion for a new trial under such circumstances.

The decision in this court, of *Levy* agt. *Joyce* (1 *Bosworth's Rep.* 622), does not conflict with this view. Though an excusable omission, and under very special circumstances, a claimant upon a fund, who had omitted to produce his proofs at all upon a trial involving the rights of many others, was admitted after judgment.

So in the important and · pertinent case of *Bell* agt. *Kelly* (2 *Harrison's N. J. Rep.* 270), there was a judgment by default, and some proceedings were taken to amerce the sheriff. There was then an application to open the judgment, on an affidavit that the defendant had been an endorser on several notes of the firm of Tyson & Co., and supposed, when sued, that the action was one of such notes ; that about the 17th day of May, 1839 (after judgment), he for the first time discovered that one of such firm had been in the habit of forging his name on several notes ; that he believed the note in question was false

and forged; that he called on the plaintiff's attorney as soon as his suspicion was aroused, who had refused to let him see the note. The judgment was opened on terms. (*See also the case cited at page* 274.)

Now, few points are better settled than this, that a motion for a new trial, on the ground of newly discovered evidence, will not be entertained where the applicant has had the means of procuring the evidence at the former trial, and could have known of its existence then with the use of similar diligence with that which has obtained it subsequently. (*Graham and Waterman, vol.* 3, 1030, 1035.)

Any degree of complicity, however, of the other side, in any fraud, or deception, or misleading, will decide the question, and induce the court to grant the application.

It is not a justifiable conclusion, upon the papers before me, that the plaintiff participated in, or knew of any such fraud. Nor should I be warranted in saying that the mere fact of the extra amount being $7,000 raises a presumption of fraud in him. He is entitled, in law and practice, to the benefit of the considerations that he has never kept a copy of his bid, believes the contract corresponded with it, and that the average of all the bids for filling earth is thirty-eight cents, and the average of the total amounts for the whole is about $14,162.

But the plaintiff, in vindicating his own integrity, presents a case for the relief of the defendants. He is to be assumed as having offered a bid at 42 cents for earth, making his aggregate amount for the work $15,197, instead of $8,137. There were then nine lower bidders. The contract was made by the mayor, aldermen and commonalty, through the street commissioner, on a misstatement or mistake of the fact. The contract sanctioned and intended to be made was for 22 cents. The contract actually made was unfounded in fact, and in my opinion void. The plaintiff meant and offered to take the contract for 42 cents. The corporation never acceded to this, but did agree to a contract, which the plaintiff never agreed to. This mutual and fundamental mistake of the very basis of the contract is ample ground for relief, and of the power of

the court to give relief I entertain no doubt. (*Levy* agt. *Joyce*, 1 *Bosworth's Rep.* 622.)

But the plaintiff has performed the work, and has got a judgment after litigation, that he is entitled to payment. There does not seem to be any justice or good reason for giving relief beyond correcting the error in this particular.

My impressions are, as the Code permits the fixing of terms and conditions, that the plaintiff has a right to put himself in the place of the actual lowest bidder, Mr. ———, whose proffer was for $10,650.

The consequence of this would be a reduction upon the judgment of $2,453, with interest from the 1st day of May, 1857.

Still, I doubt whether I can do anything regularly under this application, but to set aside the judgment and report of the referee. Whether the cause may be proceeded upon under the order of reference, or what other course may be regular, is for counsel to determine.

Order to set aside and vacate the judgment entered in this cause, with the report of the referee, and all proceedings subsequent to such judgment, without costs.

On settling the order, the counsel may bring before me the above considerations, if so advised.